# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GLENN GARY GUYN**                                              **CIVIL ACTION**

**VERSUS**                                                              **NO. 18-8975**

**JASON KENT**                                                  **SECTION: "I"(3)**

## REPORT AND RECOMMENDATION

Petitioner, Glenn Gary Guyn, a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his petition be **DISMISSED WITH PREJUDICE**.

On October 13, 2015, petitioner was convicted of possession with intent to distribute methamphetamine and operation of a clandestine laboratory for the manufacturing of methamphetamine.[1] On December 7, 2015, he then pleaded guilty to being a fourth offender and was sentenced as such on each conviction to a term of forty years imprisonment without benefit of probation or suspension of sentence.[2] On April 12, 2017, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences,[3] and the Louisiana Supreme Court thereafter denied his related writ application on June 1, 2018.[4]

On September 18, 2018, petitioner filed the instant federal application seeking habeas corpus relief.[5] The state has filed a response conceding that the application is timely and that

---

[1] State Rec., Vol. 1 of 5, transcript of October 13, 2015, pp. 222-23; State Rec., Vol. 1 of 5, minute entry dated October 13, 2015; State Rec., Vol. 3 of 5, jury verdict forms.
[2] State Rec., Vol. 2 of 5, transcript of December 7, 2015.
[3] State v. Guyn, No. 2016 KA 1059, 2017 WL 1376573 (La. App. 1st Cir. Apr. 12, 2017); State Rec., Vol. 5 of 5.
[4] State v. Guyn, 243 So. 3d 1062 (La. 2018); State Rec., Vol. 5 of 5.
[5] Rec. Doc. 3.

petitioner exhausted his remedies in the state courts; however, the state argues that his claims should be denied.[6]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[6] Rec. Doc. 8.

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (emphasis added; citations omitted); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 572 U.S. 415, 417 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On the evening of March 4, 2015, several members of the Washington Parish Sheriff's Office drug task force were conducting operations in the area of Mount Hermon.  Lieutenant Brent Goings was responding to a call in the area of Porter's Curve when he observed a green Nissan truck cross the center line of the roadway.  He alerted Detectives Steven Adcox and Jason Garbo to be on the lookout for the vehicle.  Shortly thereafter, Detective Garbo located the suspect vehicle and began to follow it, noticing that the vehicle crossed the center and fog lines of the roadway several times.   When the truck approached the area where Detective Adcox had parked his own vehicle, Detective Garbo effected a traffic stop with assistance from Detective Adcox.
>
> Detectives Adcox and Garbo made contact with defendant, who was the driver and sole occupant of the vehicle.  Defendant consented to a search of the truck.  During the ensuing search, the detectives located an open beer can, multiple small storage bags containing a white substance eventually determined to be methamphetamine, a digital scale, more than one hundred pseudoephedrine pills, empty small storage bags, and lithium batteries.  Defendant was not the registered owner of the vehicle.  The registered owner of the vehicle arrived later, but he was not arrested.
>
> Following the search of the vehicle, Detective Garbo applied for a search warrant of defendant's home, which was located approximately one-half mile from the scene of the stop, in the direction of defendant's travel.  In an ensuing search of defendant's residence, the detectives located several items that are traditionally used in the production of methamphetamine, including a plastic bottle used as an "HCl generator" and several containers of carburetor and starter fluid.  Detective Adcox also recovered $513.00 in cash from defendant's person.  In a Uniform Financial Data Questionnaire, defendant answered that he was "self-employed," had made $1,800.00 so far during the year, and currently used methamphetamine.  Defendant did not testify at trial.[7]

---

[7] State v. Guyn, No. 2016 KA 1059, 2017 WL 1376573, at *1-2 (La. App. 1st Cir. Apr. 12, 2017); State Rec., Vol. 5 of 5.

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his convictions.

On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [D]efendant contends that the evidence presented at trial was insufficient to support his convictions.  Specifically, he argues that the state failed to prove his connection to and ownership of the evidence seized from the truck and his house.
>
> A conviction based on insufficient evidence cannot stand, as it violates due process.  See U.S. Const. amend. XIV; La. Const. art. I, § 2.  In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  See also La. Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).  The Jackson standard of review, incorporated in La. Code Crim. P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
>
> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732.
>
> Under La. R.S. 40:967(A)(1), it shall be unlawful for any person knowingly or intentionally to possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II (methamphetamine, in this case).  A defendant is guilty of distribution when he transfers possession or control of a controlled dangerous substance to intended recipients.  See La. R.S. 40:961(14); State v. Cummings, 95-1377 (La. 2/28/96), 668 So.2d 1132, 1135.  To support a conviction for possession with intent to distribute methamphetamine, the state is required to prove both possession and specific intent to distribute it.  See State v. Young, 99-1264 (La. App. 1st Cir. 3/31/00), 764 So.2d 998, 1006.

Creation or Operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance includes the purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance. See La. R.S. 40:983(A)(1). Thus, the state can prove a violation of this provision by demonstrating that a defendant possessed materials, supplies, and/or equipment with the intent that they be used to unlawfully manufacture a controlled dangerous substance.

On appeal, defendant does not challenge the intent to distribute element of count two, nor does he challenge the intent element of count three. Rather, he argues simply that the state failed to prove his identity as the owner of the methamphetamine for the purposes of count two or as the owner of the materials, supplies, and equipment for the purposes of count three.

To support a conviction for possession of a controlled dangerous substance, the state must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. Guilty knowledge therefore is an essential element of the crime of possession. A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. State v. Harris, 94-0696 (La. App. 1st Cir. 6/23/95), 657 So.2d 1072, 1074-75, writ denied, 95-2046 (La. 11/13/95), 662 So.2d 477.

To be guilty of the crime of possession of a controlled dangerous substance, one need not physically possess the substance; constructive possession is sufficient. In order to establish constructive possession of the substance, the state must prove that the defendant had dominion and control over the contraband. A variety of factors are considered in determining whether a defendant exercised "dominion and control" over a drug, including: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with any person found to be in actual possession of the substance; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users. Harris, 675 So.2d at 1075. A determination of whether there is sufficient "possession" of a drug to convict depends on the peculiar facts of each case. State v. Trahan, 425 So.2d 1222, 1226 (La. 1983).

The evidence at trial established that defendant, by virtue of his dominion and control over the Nissan truck as its driver, exercised dominion and control over all of the evidence seized from the vehicle. This seized evidence included small packages of methamphetamine, a digital scale, lithium batteries, and a large quantity of pseudoephedrine pills. Similarly, the evidence established that defendant's home contained several items used in the production of methamphetamine, including at least one item – the "HCl generator" – that had no use besides the production of methamphetamine. Defendant was the sole occupant of the vehicle at the time it was stopped less than one mile from his home. The contents of the vehicle, combined with the evidence found at defendant's home, are strong circumstantial evidence that defendant knowingly possessed

7

methamphetamine with an intent to distribute it and also that he possessed materials, supplies, and equipment with the intent to produce more methamphetamine.

In the instant case, any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the state, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession with intent to distribute methamphetamine and operation of a clandestine laboratory. An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing the weight of the evidence. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.

When a case involves circumstantial evidence and the fact finder reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). We find no such hypothesis exists in the instant case. The jury's verdict indicates it rejected defendant's theory of innocence, as presented through cross-examination and argument, that he did not own the vehicle he was driving and, thus, was not aware of its contents. The jury further rejected a related argument that the items found in defendant's home had innocent uses.

Further, in reviewing the evidence, we are unable to say that the jury's determination was irrational under the facts and circumstances presented. See Ordodi, 946 So.2d at 662. A court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). In accepting a hypothesis of innocence that was not unreasonably rejected by the jury, a court of appeal impinges on a jury's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See State v. Mire, 2014-2295 (La. 1/27/16), —— So.3d ——, ——, 2016 WL 314814 at p. 4 (per curiam).

This assignment of error is without merit.[8]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[9]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the

---

[8] State v. Guyn, No. 2016 KA 1059, 2017 WL 1376573, at *2-4 (La. App. 1st Cir. Apr. 12, 2017); State Rec., Vol. 5 of 5.

[9] State v. Guyn, 243 So. 3d 1062 (La. 2018); State Rec., Vol. 5 of 5.

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017).  He has not done so.

        As the Louisiana First Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 561 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed in a habeas proceeding under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v.

Johnson, 566 U.S. 650, 651 (2012) ("We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 566 U.S. at 655 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, as in the state courts, petitioner challenges only one aspect of the state's proof, arguing that the state failed to prove that the methamphetamine in the vehicle and the laboratory equipment at the house *belonged to him*.[10]  However, as noted by the state courts, petitioner's argument ignores the fact that for the crimes of possession with intent to distribute drugs and

---

[10] See Rec. Doc. 3, p. 16 ("In this case, the only issue was possession.  The defense's theory of this case was this was not Mr. Guyn's truck and not his contraband. … Nothing found at the house or in the truck was fingerprinted or shown to belong to Mr. Guyn.  No surveillance of Mr. Guyn was done and no one testified he touched or knew the objects were in the house."); see also id. at p. 17 ("The evidence was insufficient in this case to support the requisite element of possession and ownership in this case and the state failed in upholding its burden of proof.").

operation of a clandestine drug laboratory, "constructive possession" of such contraband suffices under Louisiana law.  See State v. Simon, 245 So. 3d 1149, 1157 (La. App. 3d Cir. 2018) ("The state need not prove the defendant actually possessed the drugs, as evidence of constructive possession is sufficient.  Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of their presence." (citations omitted)), writ denied, 255 So. 3d 1052 (La. 2018); State v. Sinegal, No. 16-527, 2017 WL 6350261, at *8-9 (La. App. 3d Cir. Dec. 13, 2017) ("To support a conviction for creation of a clandestine laboratory, the State does not have to prove that a defendant was in actual, physical possession of the items; rather, constructive possession is sufficient to support a conviction.  Constructive possession exists if the items are subject to a defendant's dominion and control." (citations omitted)).

In the instant case, the testimony at trial established that petitioner was an admitted user of methamphetamine.[11]  He was driver and sole occupant of the vehicle containing the methamphetamine, the items commonly connected with methamphetamine distribution (such as a digital scale and small storage bags often used in the sale of narcotics), and the items used in methamphetamine production (pseudoephedrine pills and lithium batteries).[12]  The methamphetamine laboratory was located at the address he identified as his residence.[13]  Clearly, therefore, there was sufficient evidence for the jurors to conclude that petitioner had constructive possession of both the drugs and the laboratory equipment.

---

[11] See, e.g., State Rec., Vol. 1 of 5, transcript of October 13, 2015, p. 90.
[12] See, e.g., id. at pp. 77-82.
[13] See, e.g., id. at pp. 89-93.

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## B.  Motion to Suppress

Petitioner's second claim is that the trial court erred in denying his motion to suppress evidence. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [D]efendant contends that the trial court erred in denying his motion to suppress the evidence seized pursuant to the traffic stop. Defendant argues that the officers unlawfully prolonged the stop and that defendant did not freely and voluntarily consent to the search of the vehicle.
>
> A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 2001-0908 (La. App. 1st Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 2002-2989 (La. 4/21/03), 841 So.2d 791. Correspondingly, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, 280-81. However, a trial court's legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La. 12/1/09), 25 So.3d 746, 751.
>
> The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. A traffic stop is a type of seizure. Warrantless searches and seizures are per se unreasonable unless a court-created exception applies. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), involved one of these exceptions. In Terry, the United States Supreme Court held that a police officer need have only reasonable suspicion to perform a brief investigatory stop. The Terry court opined such a procedure may be justified though lacking probable cause if the officer acts quickly to dispel or confirm his suspicions. Terry, 392 U.S. at 28-31. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may

demand of him his name, address, and an explanation of his actions.  La. Code Crim. P. art. 215.1(A).

During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.  La. Code Crim. P. art. 215.1(D).  When a police officer detains a vehicle beyond the initial stop, he must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity."  U.S. v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).  A police officer may further detain an individual while he diligently pursues a means of investigation likely to confirm or dispel the particular suspicion.  United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).  In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account.  State v. Kalie, 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (per curiam).

As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.  The standard is a purely objective standard that does not take into account the subjective beliefs or expectations of the detaining officer.  Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.  See Whren v. U.S., 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); State v. Waters, 2000-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).

A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.  La. Code Crim. P. art. 703(A).  Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited.  Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the state to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant.  State v. Young, 2006-0234 (La. App. 1st Cir. 9/15/06), 943 So.2d 1118, 1122, writ denied, 2006-2488 (La. 5/4/07), 956 So.2d 606; see also La. Code Crim. P. art. 703(D).

A valid consent search is another exception to the warrant requirement.  See United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).  A consent to search is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected.  Matlock, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7.  The state bears the burden of proving that the consent has been freely and voluntarily given.  State v. Owen, 453 So.2d 1202, 1206 (La. 1984); State v.

Dawson, 2014-0326 (La. App. 1st Cir. 9/24/14), 154 So.3d 574, 577, writ denied, 2014-2212 (La. 8/28/15), 175 So.3d 411.

In the instant case, defendant does not challenge the propriety of the initial traffic stop and questioning. Rather, he argues that the traffic stop was unlawfully prolonged and that his consent to search the vehicle was not freely and voluntarily given.

Detective Adcox testified at the suppression hearing and at trial.[FN 5]  At the suppression hearing, Detective Adcox testified that Detective Garbo effected the traffic stop of defendant's vehicle after Lieutenant Goings radioed concerning the vehicle crossing the center line. After the vehicle was stopped, defendant exited and walked to the rear, where he spoke with Detective Garbo. Detective Garbo asked defendant whether he had been drinking, to which he responded affirmatively. Defendant also indicated that there was an open container in the vehicle. At that time, Detective Garbo asked for consent to search the vehicle, which defendant granted with the explanation that the vehicle was not his, making him unaware of anything that might be in it. Pursuant to this consent, the evidence from the vehicle was seized. No written consent form was executed.

> [FN 5]  In reviewing the correctness of the trial court's ruling on a motion to suppress evidence, the appellate court is not limited to the evidence adduced at the hearing on the motion; rather, it may consider all pertinent evidence given at the trial of the case. See State v. Chopin, 372 So.2d 1222, 1223 n.2 (La. 1979).

Detective Garbo also testified at the suppression hearing and at trial. His testimony was similar to that of Detective Adcox, stating that he stopped defendant's vehicle pursuant to Lieutenant Goings's radio call and because he personally witnessed the vehicle bounce across the center line. According to Detective Garbo, defendant exited the vehicle and met him about halfway down the side of the truck. Detective Garbo asked defendant whether he had been drinking, and defendant said he had. Detective Garbo testified that he asked for, and received, defendant's consent to search the vehicle. He confirmed that defendant told him the vehicle did not belong to him. Detective Garbo disputed defendant's contention that he did not consent to the search of the vehicle.

Defendant testified at the suppression hearing. He stated that he had not been drinking and that he was not speeding, nor did he cross the center line. Defendant stated that the officer who stopped him did not ask for identification, but indicated that the officer already knew his identity. He also testified that he did not consent to a search of the vehicle because the vehicle was not his. According to defendant, he was handcuffed and in the back of a police truck when the officers opened both doors of the vehicle and began to search it.

In denying the motion to suppress, the trial court found that the evidence in this case was seized pursuant to a consent search (the vehicle) and a search warrant (defendant's house). Considering the record as a whole, we conclude that the trial court did not err or abuse its discretion in denying the motion to suppress.

First, the decision to stop defendant's vehicle was objectively reasonable based upon Detective Garbo's observations of the vehicle crossing the center line of the highway. See La. R.S. 32:79; Whren, 517 U.S. at 819, 116 S.Ct. at 1777. Second, while defendant contends that the traffic stop was unjustifiably prolonged, all of the testimony besides his own indicates that the initial investigation of the traffic stop almost immediately led to defendant's consent to search the vehicle. Finally, while defendant contends alternately that he did not consent to a search (at the hearing) and that his consent to search was not freely and voluntarily given (on appeal), the officers' testimony reflects that defendant consented to have the vehicle searched with the caveat that anything found inside did not belong to him. The trial court clearly believed the officers' testimony over defendant's, and credibility determinations are entitled to great weight on appeal. Viewed in this light, the trial court's legal finding of a valid consent search is correct. As a result, defendant's remaining contention – that the search warrant was fruit of the poisonous tree – is not valid.

This assignment of error is without merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[15]

This Court is barred from reviewing petitioner's Fourth Amendment claim by Stone v. Powell, 428 U.S. 465 (1976). In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). The United States Fifth Circuit Court of Appeals has interpreted "full and fair" consideration of a Fourth Amendment claim to include the availability of "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when the facts are in dispute, and full consideration by an appellate court when

---

[14] State v. Guyn, No. 2016 KA 1059, 2017 WL 1376573, at *7-9 (La. App. 1st Cir. Apr. 12, 2017); State Rec., Vol. 5 of 5.
[15] State v. Guyn, 243 So. 3d 1062 (La. 2018); State Rec., Vol. 5 of 5.

the facts are not in dispute." Caver v. Alabama, 577 F.2d 1188, 1191 (5th Cir. 1978) (construing

O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977)).  The Stone bar applies even if the

state court rulings regarding a petitioner's Fourth Amendment claim were in fact erroneous.

Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the instant case, petitioner asserted his Fourth Amendment claim in the state district

court, where he was afforded an evidentiary hearing, and he challenged the denial of that claim in

both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.  Because he

was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts,

Stone bars this Court from considering that claim.

### C.  "Other Crimes" Evidence

Petitioner's third and final claim is that the trial court erred in admitting evidence of his

other crimes.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim,

holding:

> [D]efendant argues that the trial court erred in allowing the state to introduce
> evidence of two prior drug convictions at trial.  Defendant contends that the two
> prior convictions had no relevance to the crimes charged and that their probative
> value was greatly outweighed by their prejudice.
> Louisiana Code of Evidence article 404(B)(1) provides:
>
> Except as provided in Article 412, evidence of other crimes, wrongs,
> or acts is not admissible to prove the character of a person in order
> to show that he acted in conformity therewith.  It may, however, be
> admissible for other purposes, such as proof of motive, opportunity,
> intent, preparation, plan, knowledge, identity, absence of mistake or
> accident, provided that upon request by the accused, the prosecution
> in a criminal case shall provide reasonable notice in advance of trial,
> of the nature of any such evidence it intends to introduce at trial for
> such purposes, or when it relates to conduct that constitutes an
> integral part of the act or transaction that is the subject of the present
> proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lockett, 99-0917 (La. App. 1st Cir. 2/18/00), 754 So.2d 1128, 1130, writ denied, 2000-1261 (La. 3/9/01), 786 So.2d 115. A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Galliano, 2002-2849 (La. 1/10/03), 839 So.2d 932, 934 (per curiam).

In State v. Taylor, 2016-1124 & 1183 (La. 12/01/16), —— So.3d ——, 2016 WL 7030750, the Louisiana Supreme Court recently clarified the procedure by which the state may seek to introduce other crimes evidence under La. Code Evid. art. 404(B)(1) and State v. Prieur, 277 So.2d 126 (La. 1973). When the state seeks to introduce other crimes evidence, it is required to provide the defendant with written notice prior to trial of the intent to produce such evidence. See Taylor, ——– So.3d at ——, 2016 WL 7030750 at p. 7. When the state does so, the trial court is required to conduct a pretrial hearing to determine the admissibility of the other crimes evidence. See Id. at p. 6.

This hearing is not intended to be a "mini trial" of the prior offenses. Rather than the "clear and convincing" standard previously required under Prieur, Taylor clarified that when the state seeks to introduce evidence pursuant to La. Code Evid. art. 404(B), the state need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. No specific form of evidence is mandated or prohibited for every case, and sufficiency of the state's evidence must be determined on a case-by-case basis. See Id. The safeguard in Prieur providing for a jury charge regarding the limited purpose for which the other crimes evidence is presented remains valid. Id. at p. 7.

Moreover, even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence must have substantial relevance independent from showing defendant's general criminal character and thus is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. Accordingly, the state cannot simply rely on a boilerplate recitation of the grounds for admissibility stated in La. Code Evid. art. 404(B). It is the duty of the district court in its gatekeeping function to determine the independent relevancy of this evidence. The district court must also balance the probative value of the other crimes, wrongs, or acts evidence against its prejudicial effects before the evidence can be admitted. See Taylor, —— So.3d at ——, 2016 WL 7030750 at p. 7.

In the instant case, the state filed a notice of intent to use other crimes evidence, particularly evidence that defendant had previously committed offenses on December 16, 2009 for possession of methamphetamine, and on March 29, 2004 for possession with intent to distribute marijuana. In the notice of intent, the state argued that these offenses were relevant to prove defendant's intent to distribute in the instant case.[FN 3]

17

[FN 3] We recognize that while the notice of intent clearly identifies the alleged prior offenses sought to be introduced by the state, it also refers to "very recent heroin sales" that do not appear to have any connection to defendant.

Prior to the calling of the first witness, the trial court held a brief hearing on the other crimes evidence issue.[FN 4]  At this hearing, the state and defense stipulated that defendant was the individual who was convicted for the two prior crimes sought to be introduced by the state.  Defense counsel argued against the admissibility of the two prior convictions, contending primarily that they were "overkill," "highly, highly prejudicial," and ran the danger of confusing or misleading the jury.  In response, the state argued that the evidence of defendant's prior possession with intent to distribute marijuana conviction was relevant to show defendant's intent to distribute in this case.  The state also argued that the possession of methamphetamine conviction was relevant because it was the drug directly involved in this case.

[FN 4] Defendant argues in his brief that no pretrial hearing ever took place, but this issue was clearly addressed by the parties at this time.  Further, while Taylor may indicate that an independent pretrial Prieur hearing is now required, defendant did not contemporaneously object to the procedure used by the trial court to address the other crimes issue.  Thus, he is precluded from raising this issue on appeal.  See La. Code Crim. P. art. 841(A).

The trial court accepted the stipulation as to defendant's identity, but reserved its ruling as to the admissibility and introduction of the evidence until the state attempted to present it at trial.  Because the trial court accepted the stipulation, there is no question that the evidence at this hearing was sufficient to support a finding that defendant committed the other crimes.  See Taylor, ―― So.3d at ――, 2016 WL 7030750 at p. 6.

During a recess, outside of the presence of the jury, the trial court brought up the other crimes evidence issue and stated:

And concerning the 404(B) motion, the Court has heard the opening statements in this matter, the questioning of the witnesses by defense counsel, [and] it's clear to the Court that issues of knowledge, mistake, intent, and identity are being placed before this jury.  Therefore, under 404(B), the Court is going to allow the use of the prior convictions in accordance with the law.

At the time the trial court made this ruling, defense counsel had cross-examined two witnesses extensively about whether certain evidence had been fingerprinted or had attempted to have been fingerprinted.  It had not.  The apparent aim of this line of questioning was to call into doubt defendant's connections to the

methamphetamine and other contraband.  The state ultimately introduced certified copies of defendant's convictions as evidence of these two prior offenses.

Because defendant was charged with possession with intent to distribute methamphetamine, the state had the burden of proving intent at trial.  Whether a defendant ever distributed or attempted to distribute illegal drugs is a circumstantial factor relevant to proving intent to distribute.  See State v. Smith, 2003-0917, (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 800.  Therefore, the 2004 conviction for possession with intent to distribute marijuana was relevant to the issue of intent. While evidence of any prior conviction is necessarily prejudicial, we cannot say that the evidence of this 2004 conviction was so inflammatory as to create an unacceptable risk of luring jurors into declaring guilt on a ground different from proof specific to the offense charged.  See Taylor, —— So.3d at ——, 2016 WL 7030750 at p. 10.  Notably, the proof itself consisted only of the bill of information charging the offense and a copy of the plea transcript, neither of which contained any sort of narrative that might risk confusing or misleading the jury.  Therefore, the trial court did not abuse its discretion in finding the evidence of this offense to be admissible.

As to the 2009 conviction for possession of methamphetamine, while the state argued that this offense should be admissible because it included the same drug as was involved in this case, that explanation runs close to the prohibition of proving the character of a person to show that he acted in conformity therewith, as is prohibited by La. Code Evid. art. 404(B)(1).  However, the trial court also found that the issues of knowledge and potential mistake had been raised by defense counsel's opening statements and lines of questioning.  To that extent, defendant's prior conviction for possession of methamphetamine potentially could be relevant to negate any argument by the defense that defendant did not know he was in possession of the methamphetamine that was located in the truck.  Again, the proof of this evidence consisted only of a bill of information and minute entry, neither of which contained any narrative of the prior offense.  While the evidence of this conviction was undoubtedly prejudicial simply because of its nature, we cannot say it was so inflammatory as to create an unacceptable risk of luring jurors into declaring guilt on a ground different from proof specific to the offense charged. See Taylor, —— So.3d at ——, 2016 WL 7030750 at p. 10.  Therefore, the trial court did not abuse its discretion in allowing the state to introduce the evidence of the 2009 conviction for possession of methamphetamine.

This assignment of error is without merit.[16]

---

[16] State v. Guyn, No. 2016 KA 1059, 2017 WL 1376573, at *4-7 (La. App. 1st Cir. Apr. 12, 2017); State Rec., Vol. 5 of 5.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[17]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is simply arguing that the state courts misapplied state evidence law, his claim is not reviewable in this federal proceeding. See, e.g., Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

Moreover, to the extent that petitioner is perhaps claiming that his federal right to due process was violated by the admission of the "other crimes" evidence, he fares no better for the following reasons.

First, the state notes in its response that a state court decision denying such a claim could be the basis for federal habeas corpus relief only if the decision were "contrary to" or an "unreasonable application of" clearly established federal law. See 28 U.S.C. § 2254(d)(1). The state opines that is impossible because the United States Supreme Court has never held that the admission of other "other crimes" evidence can serve as the basis for a due process violation. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (holding that when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law" (quotation marks and brackets omitted)). That point is well taken. See, e.g., Wallace v. Deville, No. 17-407, 2017 WL 2199024, at *16 (E.D. La. Apr. 26, 2017) ("Absent controlling Supreme Court precedent on

---

[17] State v. Guyn, 243 So. 3d 1062 (La. 2018); State Rec., Vol. 5 of 5.

the issue [of whether the admission of prior crimes evidence violates due process], the state courts'
determination cannot be said to be contrary to, or an unreasonable application of, clearly
established federal law."), adopted, 2017 WL 2198957 (E.D. La. May 18, 2017).

Second, petitioner's claim also fails under the normal due process analysis applied to
evidentiary claims. With respect to such claims, the United States Fifth Circuit Court of Appeals
has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless
> those errors result in a "denial of fundamental fairness" under the Due Process
> Clause. The erroneous admission of prejudicial evidence will justify habeas relief
> only if the admission was a crucial, highly significant factor in the defendant's
> conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); accord Little, 162 F.3d at 862
("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly
significant role in the trial will habeas relief be warranted."). Petitioner's claim fails under that
analysis for the following reasons.

Even if petitioner could show that the evidence was in fact improperly admitted, which is
doubtful for the reasons noted by the Louisiana First Circuit Court of Appeal, federal habeas relief
still would not be warranted because it simply cannot be said that the "other crimes" evidence
played a crucial, critical, and highly significant role in the instant convictions. As an initial matter,
it must be noted that the jurors were carefully instructed by the court regarding the limited purposes
for which the "other crimes" evidence could be considered,[18] and courts have repeatedly held that

---

[18] At the time the evidence was admitted, the trial judge gave the following limiting instruction:

> Ladies and gentlemen, the last two exhibits that were introduced are evidence that Mr.
> Guyn was involved in the commission of another offense other than the offense for which he is on
> trial. So it is to be considered only for a limited purpose. The sole purpose for which such evidence

jurors are presumed to follow their instructions.  See, e.g., Jones v. United States, 527 U.S. 373, 394 (1999); United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1349 (5th Cir. 1994).  Further, and more importantly, it must be remembered that, as already noted in this opinion, the testimony at trial established the following facts:  petitioner was an admitted user of methamphetamine;[19] he was driver and sole occupant of the vehicle containing the methamphetamine, the items commonly connected with methamphetamine distribution, and the items used in methamphetamine production;[20] and the methamphetamine laboratory was located at the address he identified as his residence.[21]  Obviously, therefore, even without the "other crimes" evidence, there was ample independent evidence that petitioner was guilty of the charged offenses.

For all of these reasons, this claim should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Glenn Gary Guyn be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

may be considered is whether it tends to show knowledge, absence of mistake or accident, intent, or identity.
  Remember, the accused is on trial only for the offenses charged.  You may not find him guilty of either of these offenses merely because he may have committed another offense.

State Rec., Vol. 1 of 5, transcript of October 13, 2015, p. 146.  A similar instruction was also included in the jury charges at the end of trial.  Id. at p. 210.
[19] See, e.g., State Rec., Vol. 1 of 5, transcript of October 13, 2015, p. 90.
[20]  See, e.g., id. at pp. 77-82.
[21] See, e.g., id. at pp. 89-93.

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ____31st____ day of January, 2019.


**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**